UNITED STATES DISTRICT COURT

IN AND FOR THE EASTERN DISTRICT OF CALIFORNIA

MONSURU TIJANI,

       Plaintiff,

vs.

LOU BLANAS and DEPUTY DUNCAN BROWN,

       Defendants.

CASE NO. **2:00-CV-00069-RRB-EFB**

~~[PROPOSED]~~
**ORDER ON DEFENDANTS' RULE 50 MOTION FOR JUDGMENT AS A MATTER OF LAW**

At the pretrial conference attended by Plaintiff, in pro per, and counsel for Defendants, on March 14, 2007, Plaintiff voluntarily dismissed defendant Deputy Duncan Brown, based upon his self declared lack of evidence to support a claim of violation of his constitutional rights by Defendant Brown. Defendant Duncan Brown was then dismissed by Court order.

At the next pretrial conference in this matter on March 15, 2007, Plaintiff indicated that he would be his only witness at trial. Defendant then proposed to Plaintiff and the Court that the parties stipulate to consider a Rule 50 motion for judgment as a matter of law, and that the case proceed on an offer of proof by Plaintiff to the Court. The Court could then determine whether Plaintiff had sufficient evidence to support his remaining claims against the sole defendant, Lou

1

1  Blanas, and proceed to a jury trial.[1]

2      Pursuant to Rule 50 of the Federal Rules of Civil Procedure, the court is permitted to

3  take a case away from the jury by entering a judgment if there is not sufficient evidence to raise

4  a genuine factual controversy. Rule 50 states that a motion for judgment as a matter of law may

5  be brought after a party has been fully heard on an issue during a jury trial.  In this case, the more

6  appropriate motion by Defendant may have been a motion for summary judgment under Rule 56,

7  which is brought prior to trial.  However, the prerequisites for, and effect of summary judgment

8  pursuant to Rule 56 is the same as judgements as a matter of law entered under Rule 50.  See

9  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202

10  (1986)(noting that summary judgment standard "mirrors the standard for a directed verdict under

11  Federal Rule of civil Procedure 50(a), which is that the trial judge must direct a verdict if, under

12  the governing law, there can be but one reasonable conclusion as to the verdict").  Both motions

13  test the sufficiency of evidence and whether a reasonable jury could return a verdict in favor of

14  the nonmoving party.  The difference between the motions is that of timing; Rule 56 motions

15  being brought prior to trial to determine whether there is any need to convene a trial, and Rule

16  50 motions being brought typically after presentation of the Plaintiff's case, to determine

17  whether there is any need for the trial to continue to jury deliberation.  See Commentary to Rule

18  56, Baicker-McKee, Janssen and Corr, Federal Civil Rules Handbook, 2007, Thomson/West.

19      The Court explained the procedure to Plaintiff, that Plaintiff would be permitted to

20  present to the Court all the evidence that he would be presenting to the jury, and the Court would

21  then determine the sufficiency of the evidence and whether Plaintiff had enough evidence to

22  proceed to trial.[2]  The Court informed Plaintiff that if he did not have sufficient evidence, his

23

24  [1]The court also has inherent power to sua sponte dismiss a complaint where it lacks an arguable basis either in law or in fact.  Neitzke v. Williams, 490 U.S. 319, 325 (1989) ("a complaint, containing as it does both factual allegations and legal conclusions, is frivolous [under 1915(d)] where it lacks an arguable basis either in law or in fact").

25  See also, Denton v. Hernandez, 504 U.S. 25, 31-32 (1992).

26  [2]The sufficiency of the evidence is an issue of law to be determined by the judge. Lange v. Penn Mut. Life Ins. Co., 843 F.2d 1175, 1181 (9th Cir. 1988).  The court must view all evidence in the light most favorable to the party

27  opposing the motion. Cobb v. Pozzi, 363 F.3d 89, 101( 2d Cir. 2004)(essentially, the standard for a Rule 50 motion is

28      2

1   case would be dismissed.  Plaintiff agreed to permit the Court to entertain a Rule 50 motion for

2   judgment without empaneling a jury and make an offer of proof to the Court for determination

3   pursuant to Defendant's motion for judgment as a matter of law.  The case at this time was

4   proceeding only on Plaintiff's claims against Defendant Lou Blanas in his individual and official

5   capacities for violation of Plaintiff's constitutional rights under the Fourteenth Amendment to

6   the Constitution as a pretrial detainee on October 7, 1998.

7       By offer of proof, Plaintiff presented his case to the Court and stated in summary as

8   follows:   Plaintiff was housed in the 4 West 300 pod of the Main Jail in October of 1998, as a

9   pretrial detainee.  Plaintiff had been incarcerated and served time on two previous occasions.

10  During the early morning hours of October 7, 1998, at approximately 1:15 a.m., a cell search  or

11  "shakedown" was conducted in the 4 West 300 pod.  The temperature outside in the exercise

12  yard where all inmates were taken while their cells were searched, was approximately 50-52

13  degrees Fahrenheit.  Plaintiff alleges that the conditions under which he was held in the exercise

14  yard during the search of the cells, and the strip search which occurred at that time, caused him

15  to remain naked for 45 minutes at cold temperatures, with his arms raised, while monitored by

16  Deputies with firearms. Plaintiff also alleged that he was hit in the back with a hard object while

17  outside during the search, although he does not know who did so, or with what he was allegedly

18  struck.  Plaintiff did not report to Jail Health Services any injuries to his back as a result of this

19  allegation.  Plaintiff  never told medical staff he was hit in the back with an object. Plaintiff

20  states that as a result of this incident, he has problems with people in uniform.  Plaintiff claims

21  this event violated his Constitutional Rights.

22      The Court confirmed by two subsequent requests during the course of this hearing, that

23  Plaintiff had no additional evidence to present in support of his claims.

24      Defendant Lou Blanas was not Sheriff of Sacramento County until February of 1999.

25  However, by previous admission, Lou Blanas is deemed to have been Sheriff of Sacramento

26

27  the same as the standard for a summary judgment motion under Rule 56).

28                                          3

1   County at the time of Plaintiff's complaint for the purposes of a <u>Monell</u> claim against the

2   County of Sacramento. Defendant offered that Lou Blanas had no personal involvement in the

3   shakedown on October 7, 1998, and Plaintiff offered no evidence to the contrary.

4       Plaintiff had no evidence to present to the Court to support his claim against Sheriff

5   Blanas individually.  For an official to be liable in his individual capacity,  the  plaintiff must

6   show that the official "set in motion a series of acts by others, or knowingly refused to terminate

7   a series of acts by others, which he knew or reasonably should have known, would cause others

8   to inflict the constitutional injury" allegedly sustained by the plaintiff. <u>Larez v. City of Los</u>

9   <u>Angeles</u>, 946 F.2d 630, 646 (9th Cir. 1991).  In a section 1983 action, "supervisory officials are

10   not liable for actions of subordinates on any theory of vicarious liability." <u>Hansen v. Black</u>, 885

11   F.2d 642, 645-646 (9th Cir. 1989) *citing* <u>Pembaur v. City of Cincinnati</u>, 475 U.S. 469, 479

12   (1986).  In <u>Hansen</u>, the court set forth the circumstances under which a supervisor may be liable

13   as follows: "[a] supervisor may be liable if there exists either (1) his or her personal involvement

14   in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's

15   wrongful conduct and the constitutional violation." <u>Id.</u> at 646.  This is a form of direct liability,

16   and, therefore, plaintiff must prove the individual acted with deliberate indifference. (See

17   <u>Redman v. County of San Diego</u>, 942 F.2d 1435, 1443 (9th Cir. 1991).)  Plaintiff had no

18   evidence that Lou Blanas was personally involved in or set in motion any acts which violated

19   Plaintiff's constitutional rights on October 7, 1998, nor that Lou Blanas acquiesced to any such

20   violation subsequent to its occurrence.  Therefore, Defendant Lou Blanas cannot be liable in his

21   individual capacity.

22       When a claim is made against an official of a public entity in his or her official capacity,

23   the claim is simply treated as one against the public entity. <u>Kentucky v. Graham</u>, 473 U.S. 159

24   (1985).  The claim against Defendant Lou Blanas in his official capacity is therefore evaluated

25   as against the County of Sacramento.

26       A local public entity may only be liable in a Section 1983 action where there is an

27   official policy, custom, or practice of the public entity of deliberate indifference to the rights of

28   4

individuals, and as a result thereof, the plaintiff in the particular litigation suffered a deprivation

of his rights. Monell v. Department of Social Services of the City of New York, 436 U.S. 658

(1978). A local government may not be sued under § 1983 for an injury inflicted solely by its

employees or agents. Id. at 694. Instead, it is when execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to

represent official policy, inflicts the injury that the government as an entity is responsible under

§ 1983. Id. A municipality cannot be liable under § 1983 simply on the basis of respondeat

superior. Id. at 694-95. Under §1983, a municipality can only be held liable if it is shown that:

> (1)    An agent of the municipality, acting under the color of state law, violated a federal right of the plaintiff. Id.;
> (2)    There is an affirmative link between the policy and the constitutional violation. City of Oklahoma City v. Tuttle, 471 U.S. 808, 823 (1985); and
> (3)    The conduct of the policy or decision makers, or the policy itself, must have resulted from a "deliberate indifference" to the rights of the plaintiff.
> City of Canton v. Harris, 489 U.S. 378, 385 (1989).

The plaintiff has the burden of establishing "deliberate indifference" to create liability,

and:

> "The existence of a policy, without more, is insufficient to trigger local government liability under Section 1983. City of Canton, 486 U.S. [378] 388-389, 109 S.Ct. [1197], 1205 [(1989)]. Under City of Canton, before a local government entity may be held liable for failing to act to preserve a constitutional right, plaintiff must demonstrate that the official policy 'evidences a "deliberate indifference"' to his constitutional rights. [Citation omitted.] This occurs when the need for more of different action is 'so obvious, and the inadequacy of the current procedure is so likely to result in the violation of constitutional rights, that the policy makers...can be reasonably said to have been deliberately indifferent to the need.'" Oviatt by and through Waugh v. Pierce, 954 F.2d 1470, 1477-1478 (9th Cir. 1992).

Plaintiff's lawsuit for violation of his Constitutional Rights falls under the due process

clause of the Fourteenth Amendment, for alleged events while he was confined at the

Sacramento County Jail as a pretrial detainee awaiting trial for criminal charges of fraud. The

due process clause of the Fourteenth Amendment states that, "no state shall deprive any person

of life, liberty, or property, without due process of law." Conduct that amounts to "mere

negligence" by prison officials is not sufficient to trigger the substantive due process protection

1   of the Fourteenth Amendment of the U.S. Constitution. Redman, supra, at 1440, citing Daniels
2   v. Williams, 474 U.S. 327, 330-32 (1986). Determination of whether a liberty interest protected
3   by the due process clause has been violated involves a balancing. Redman, supra at 1440. To
4   decide whether a substantive right protected by the due process clause has been violated, it is
5   necessary to balance "the liberty of the individual" and "the demands of an organized society."
6   Id., citing Youngberg v. Romeo, 457 U.S. 307, 320 (1982).

7          A claim under 42 U.S. C. § 1983 requires the claimant to prove (1) that a person acting
8   under color of state law (2) committed an act that deprived the claimant of some right, privilege,
9   or immunity protected by the Constitution or laws of the United States. Redman v. County of
10   San Diego, 842 F.2d 1435, 1439; Leer v. Murphy, 844 F.2d 628, 632-33 (1988). A person
11   deprives another of a constitutional right, within the meaning of 42 U.S.C. § 1983, if he does an
12   affirmative act, participates in another's affirmative act(s), or omits to perform an act which he
13   is legally required to do that causes the deprivation of which a plaintiff complains. Leer v.
14   Murphy, 844 F.2d 628, 633 (9th Cir. 1988), quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th
15   Cir. 1978).

16          As a pretrial detainee, Plaintiff cannot be punished through the use of excessive force,
17   prior to adjudication of the charges against him. Graham v. Connor, 490 U.S. 386, 395 n.10
18   (1989), citing Bell v. Wolfish, 441 U.S. 520, 535-39 (1979). In Bell v. Wolfish, the court stated
19   that the proper standard with respect to pretrial detainees, is to determine whether the conditions
20   to which the plaintiff/inmate was subjected amounted to *punishment* so as to violate the
21   detainee's due process rights, or whether the conditions served a legitimate governmental
22   purpose in ensuring the safety and security of the facility. Bell v. Wolfish, supra at 540.

23          The government has legitimate interests that stem from its need to manage the
24   correctional facility in which the individual is detained. Id. at 540. The Supreme Court has
25   held that "maintaining institutional security and preserving internal order and discipline are
26   essential goals that may require limitation or retraction of the retained constitutional rights of
27   both convicted prisoners and pretrial detainees." Id. at 546. If a particular condition or

28                                                            6

1  restriction of pretrial detention is reasonably related to the institution's interest in maintaining

2  jail security, it does not, without more, amount to punishment. Id. at 547.  Within the prison

3  context, the Supreme Court wrote in Resweber that the due process clause is not violated so long

4  as the government conduct is not "repugnant to the conscience of mankind." Louisiana ex rel.

5  Francis v. Resweber, 329 U.S. 459, 471-72 (1947)  The Estelle court relied upon Resweber in

6  stating that in order to invoke violation of the due process clause of the Fourteenth Amendment,

7  conduct must either be "an unnecessary and wanton infliction of pain" or "repugnant to the

8  conscience of mankind" to be that which is "sufficiently harmful to evidence deliberate

9  indifference." Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).

10  Prison administrators are to take all necessary steps to ensure the safety of not only the

11  prison staffs and administrative personnel, but also visitors.  Hudson v. Palmer, 468 U.S. 517,

12  527 (1983).   They are also under an obligation to take reasonable measures to guarantee the

13  safety of the inmates themselves. Id. The court in Bell has recognized and authorized irregular

14  unannounced shakedown searches of prison cells, including those of pretrial detainees.  Bell v.

15  Wolfish, 441 U.S. 520, 555-557 (1979).  Prison officials are accorded wide-ranging deference

16  on the adoption and execution of policies and practices that in their judgment are needed to

17  preserve internal order and discipline and to maintain institutional security.  Id. at 547; Turner v.

18  Safley, 482 U.S. 78, 89 (1987).

19  In order to prevail on a claim for violation of due process under the Fourteenth

20  Amendment, a pretrial detainee must establish the defendant acted with deliberate indifference.

21  Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir. 1991).  The Redman court stated

22  that the "deliberate indifference" standard "provides an appropriate balance of the pretrial

23  detainees' right to not be punished with the deference given to prison officials to manage the

24  prisons." Id.

25  Plaintiff's claims stem from a cell and inmate search ("shakedown") at the Sacramento

26  County Main Jail in the early morning hours of October 7, 1998.  Plaintiff has the burden to

27  prove by a preponderance of the evidence that the events of which he has complained were

28

1   intended by prison officials as, and constituted, punishment rather than being reasonably related

2   to the institution's interest in maintaining jail security and the safety of those within the facility.

3   Turner v. Safley, 482 U.S. 78, 89 (1987).  Mere discomfort is not a constitutional violation.

4   Rhodes vs. Chapman, 452 US 337, 347 (1981).

5       Plaintiff has claimed that the customs, policies or procedures employed by the

6   Sacramento County Sheriff's Department to conduct cell and inmate searches at the Main Jail,

7   through Lou Blanas in his official and/or his individual capacity, amounted to punishment in

8   violation of his due process rights under the Fourteenth Amendment to the United States

9   Constitution.  "Deliberate indifference," the standard used to measure violations of the eighth

10  amendment's proscription of cruel and unusual punishment, not only applies to persons whose

11  status permits punishment, but also as to a pretrial detainee who may not be punished.  See

12  Redman v. County of San Diego, 942 F.2d 1435, 1442 (9th Cir. 1991).

13      The requirement that Plaintiff establish the conduct complained of amounts to

14  "deliberate indifference" to his constitutional rights provides the appropriate balance of the

15  pretrial detainee's right not to be punished with the deference which must be given to prison

16  officials to properly and safely manage prisons.  Redman at 1443.  Plaintiff has the burden of

17  proof to establish that the conduct of which he complains reached the level of punishment and

18  amounted to "deliberate indifference" in order to establish that his rights were violated under the

19  Fourteenth Amendment.  Id.  The showing of a deprivation is not enough; the Plaintiff must

20  also show that the Defendant knew of the condition in question and through deliberate

21  indifference to the Plaintiff's suffering either, caused it or permitted it to continue.  Wilson

22  Seiter, 501 US 294 301-304 (1991).

23      Deliberate indifference is found when the official is aware of facts from which the

24  inference could be drawn that a substantial risk of serious harm exists, and he must also draw

25  that inference.  See Farmer v. Brennan, 511 U.S. 825 (1994).  To establish deliberate

26  indifference by Lou Blanas in his official capacity, Plaintiff must prove that Blanas as an

27  official policy-maker, knew that the custom, policy or procedure of which Plaintiff complains

28                                         8

1   created a substantial likelihood of resulting in the violation of Plaintiff's Constitutional rights,

2   such that it can be reasonably concluded that defendant Blanas deliberately disregarded that risk

3   by failing to take reasonable measures to prevent the violation. See Oviatt, supra. See also,

4   Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). Plaintiff is also required to

5   establish that such a custom, policy or procedure exists. See City of Canton v. Harris, 489 U.S.

6   378, 389 (1989). Liability in an official capacity can only be found "if a policy or custom [or

7   one-time decision by a governmentally authorized decision-maker (see Pembaur v. City of

8   Cincinnati, 475 U.S. 469, 481 (1986))]. . .played a part in the violation of federal law," Larez at

9   646, quoting McRorie v. Shimoda, 795 F.2d 780, 783 (9th Cir. 1986). The defendant charged

10  must be an official policymaker in order for this form of liability to apply. Even if Plaintiff's

11  version of the facts during the shakedown were true, Plaintiff had no evidence of a policy or

12  practice by the Sacramento Sheriff's Department regarding shakedowns which violates the

13  Constitutional rights of the inmates, much less that a policy or practice which did exist violated

14  his Constitutional rights.

15      Finally, in the case of the City of Oklahoma City v. Tuttle, 471 U.S. 808, 105 S.Ct. 2427,

16  2436, 85 L.Ed. 2d 791 (1985), the Supreme Court held that it was reversible error to allow a jury

17  to infer from a single event that a unconstitutional policy existed for purposes of imposition of

18  §1983 liability on a public entity. "Proof of a single incident of unconstitutional activity is not

19  sufficient to impose liability under Monell v. Dept. of Social Servs. of the City of New York,

20  436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), unless proof of the incident includes proof

21  that it was caused by an existing, unconstitutional municipal policy, which policy can be

22  attributed to a municipal policymaker." Oklahoma City v. Tuttle, supra. See also, Fargo v. San

23  Juan Bautista, 957 F.2d 638, 643 (9th Cir. 1988). In this case, Plaintiff offered no evidence to

24  support his theory that the County of Sacramento has a "policy" with respect to cell searches and

25  "shakedowns" which violates the Constitutional rights of inmates. Even if the facts of the

26  incidents as set forth by Plaintiff are deemed to be true, it is doubtful that first of all his

27  constitutional rights were violated on this occasion, and second, that with nothing more than his

28                                          9

1  own testimony, that the County of Sacramento has a policy or custom which can be deemed to

2  inflict Constitutional injury on inmates during cell searches or "shakedowns".

3      Construing all evidence in a light most favorable to Plaintiff, and making all reasonable

4  inferences in Plaintiff's favor, Defendant is entitled to judgment as a matter of law as Plaintiff

5  cannot show that a policy, practice or custom exists pursuant to which his Constitutional rights

6  were violated.  No reasonable jury could conclude otherwise.

7      Therefore, it is hereby ORDERED that judgment be granted in favor of Defendant, and

8  this case be DISMISSED.  Each party shall bear its own costs and fees.

9

10  Dated: April 17, 2007

11      THE HONORABLE RALPH R. BEISTLINE
        Judge of the United States District Court
12      For the Eastern District of California

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    10